Argued and submitted September 15, 1998, affirmed May 19, 1999

## SAIF CORPORATION
and Reedsport School District 105,
*Petitioners,*

*v.*

## Carol J. LELAND
and Department of Consumer and Business Services,
*Respondents.*

(H97-077; CA A99408)

982 P2d 48

Julene Quinn argued the cause for petitioners. On the brief was Michael O. Whitty.

Edward J. Harri argued the cause for respondent Carol J. Leland. With him on the brief were Randy Elmer and Emmons, Kropp, Kryger, Alexander, Egan & Elmer.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Employer Reedsport School District 105 and SAIF Corporation seek review of a final order in which the Director of the Department of Consumer and Business Services (the Director) determined that surgery performed on claimant's back was appropriate treatment for her condition. On review, employer contends that the Director either misunderstood or misapplied the substantial evidence standard in setting aside the order of the medical review unit (MRU) that held that claimant's back surgery was not appropriate medical treatment.[1] We conclude that the Director properly applied the substantial evidence standard and affirm.

Claimant has a long history of chronic back pain, including an October 1988 low back injury and a May 1992 mid-thoracic injury. Claimant had worked as a school cook since 1983. On May 26, 1995, she sustained a compensable back injury while lifting a case of frozen food at work. Dr. Bert, claimant's treating physician, concluded that the L2-3 disk level was causing claimant's back pain. He recommended physical therapy and medication. SAIF accepted the claim for low back strain and herniated disks at L2-3 and L5-S1.

Between May 1995 and January 1997, when Bert performed a L5-S1 discectomy, numerous other physicians examined claimant, reviewed her medical records, and offered a variety of opinions about the cause or source of claimant's back pain. A number of those physicians concluded that claimant did not have a herniated disk or that her pain was due to extensive degenerative disk disease and that surgical intervention would not relieve her pain. Bert disagreed with those opinions but initially took a slow approach, continuing conservative treatment and deferring surgery, because claimant's diffuse pain made it difficult to determine whether surgery at the L2-3 level, which was what was being considered at the time, would resolve her back condition. At Bert's request, Dr. Karasek performed a four-level

---

[1] The Director's final order was in accordance with a ruling by an administrative law judge (ALJ) who also disagreed with the conclusion of the MRU on substantial evidence review.

lumbar discography in June 1996, which revealed that the L5-S1 disk was the only painful disk. Bert then requested authorization for surgery at L5-S1. Despite recommendations by other doctors against surgery, Bert performed a L5-S1 discectomy in January 1997. Bert's surgical and postoperative report confirmed his opinion that claimant's back pain had its origin in a herniated disk at the L5-S1 level:

> "The interspinous ligament and ligamentum flavum were removed at 5-1 on the inferior portion of the lamina of L5 and superior portion of the lamina of S1. With gentle retraction of the dura a large bulging L5-S1 disk was identified.
>
> "Interestingly, there were large synovial cysts pushing into the neural foramina bilaterally. These were removed and partial fasciectomies performed leaving two-thirds of the facet joints at 5-1."

Bert also reported that the surgery had, in fact, relieved most of claimant's pain.

In February 1997, Dr. Rohrer, another neurosurgeon, conducted a file review at the request of the Director and concluded from the preoperative radiographic data alone that the L5-S1 surgery was neither necessary nor appropriate treatment for claimant.

On April 3, 1997, the MRU disapproved the surgery that Bert had performed on claimant's L5-S1 disk. The order relied on the expert opinion of six physicians who stated that back surgery was not appropriate. The MRU concluded that, although claimant no doubt suffered back pain, the "overwhelming majority of medical evidence" suggested that the pain was the result of her degenerative disk disease and that surgery would not be successful in relieving it. Claimant requested a contested case hearing to review the decision.

On May 21, 1997, an ALJ conducted a telephone hearing, as a result of which he set aside the MRU order and ordered SAIF to reimburse claimant for the surgery and to pay claimant $2,100 as a reasonable attorney fee. The ALJ adopted the findings of fact from the MRU's order but also found that Bert's postoperative report recorded that, during the surgery, "a large bulging L5-S1 disk was identified" and

removed and that the report indicated that large synovial cysts were pushing into the neural foramina bilaterally. The ALJ further found that Rohrer had used only radiographic data to determine that the surgery at the L5-S1 level was not necessary or appropriate. Although Bert's postoperative report was before the MRU, the report was not discussed in its decision.

Employer contests much in the ALJ's proposed order; however, those disputed findings and conclusions do not appear in the Director's final order, which is the proper subject of our review. Accordingly, we do not address that part of employer's argument.

In his final order, the Director agreed that there was substantial evidence before the MRU to find that *some* of claimant's pain was caused by degenerative disk disease. However, the Director found that there was not substantial evidence to support the MRU's finding that the surgery was inappropriate. The Director set aside the MRU order because the order found that the surgery was inappropriate based solely on medical evidence rendered before claimant's actual surgery. Because he modified the order on the ground that it was not supported by substantial evidence, the Director's order did not reach claimant's error of law argument that the MRU failed to observe the requirement to give more weight to the opinions of the treating physician when medical opinion is divided unless persuasive reasons obtain for not doing so. The MRU stated that rule but, according to the ALJ, failed to state any reasons, "persuasive, or otherwise, for finding Dr. Bert's rationale less persuasive than the rationale of the doctors in opposition to the surgery."

Employer assigns two errors to the Director's final order that amount to the same argument, namely, that the Director failed to apply substantial evidence review pursuant to ORS 656.327(2). Employer requests that we remand the case to the Director to conduct a proper review of the MRU unless we concur that, under *Younger v. City of Portland*, 305 Or 346, 752 P2d 262 (1988), this particular case is so at odds with the agency's decision that the court can infer that the agency "had misunderstood or misapplied its scope of review." *Id.* at 359. If so, employer asks that we conduct our

own substantial evidence review of the MRU and reverse the Director.

■ We review employer's contention that the Director misunderstood or misapplied the substantial evidence limitation for errors of law. ORS 183.482(8)(a). In *O'Neil v. National Union Fire*, 152 Or App 497, 500-01, 954 P2d 847, *rev den* 327 Or 317 (1998), we summarized the process by which a medical treatment dispute is reviewed:

> "The first stage consists of a review of the disputed treatment by the Medical Review Unit (MRU) of the Workers' Compensation Division. Its review is not required to * * * follow a contested case or other plenary quasi-judicial format. The MRU gathers and reviews 'medical information and records,' and its efforts are to culminate in a 'documentary record sufficient for judicial review' and an 'administrative order' ruling on the appropriateness of the treatment. The second stage, which may be initiated after the conclusion of the first upon the request of the worker, employer or insurer, ostensibly consists of a contested case hearing process pursuant to the Administrative Procedures Act (APA). ORS 183.310 *et seq.* By the terms of ORS 656.327(2), that process is to culminate in an order by the Director, limited to the questions of whether the first-stage administrative order is supported by substantial evidence and is free of legal error.

> "The 'Director's' actions at the second stage are actually divided into two parts. As with the first stage, neither of those parts is actually performed by the Director. The second stage begins with a proceeding before an administrative law judge (ALJ); if sought, the ALJ's 'proposed order' is then reviewable by the administrator of the Workers' Compensation Division. At the second stage, argument and some testimony may be presented but 'new medical evidence or issues' may not be. As to those matters, both the ALJ's and the administrator's decisions are based on the information in the record generated by and before the MRU."

Employer argues that the Director performed a *de facto de novo* review prohibited by ORS 656.327(2). It first supports that contention by arguing that the Director misstated the issue in this case as "[w]hether the Medical Review Unit (MRU) order of April 3, 1997 correctly determined that

the L5-S1 disk surgery performed by Jeffery Bert, M.D., on January 28, 1997, was inappropriate for claimant's compensable condition." We agree with employer that the better way to frame the issue was whether substantial evidence supported the MRU's finding that the disk surgery was not appropriate. However, the question is not whether the Director's statement of the issue was correct; it is whether the type of review the Director actually performed was correct.

Employer further argues that, because the Director and ALJ included the postoperative report and other postoperative information from Bert in their orders as findings of fact, and that information was not discussed in the MRU order, they made additional findings of fact, thus either misunderstanding or misapplying the substantial evidence review. Employer cites *1000 Friends of Oregon v. Marion County*, 116 Or App 584, 842 P2d 441 (1992), for the proposition that this court may not make new findings of fact when conducting a substantial evidence review. We disagree.

■ Unlike an appellate court reviewing an agency finding, the Director is required by ORS 656.327(2) to prepare a full record capable of judicial review. However, more importantly, the Director did not make additional medical findings that are prohibited under ORS 656.327(2). All of the alleged new findings made by the Director that were disputed by employer were based on evidence available to the MRU in the original record.[2] Claimant counters that it was unreasonable for the MRU to have ignored it and not impermissible for the ALJ and Director to consider it. We agree with claimant. The issue reviewed by the Director was whether substantial evidence supported the MRU's decision that surgery on the L5-S1 disk was not appropriate. The MRU relied on reports that assumed that claimant had no ruptured disk. All but one of the consulting physicians made his evaluation before the results of the surgery at L5-S1 were available. None of them considered the fact that Bert found a large ruptured disk at L5-S1 during the surgery. The MRU ignored that evidence

---

[2] Although Exhibit 189, which is Bert's postoperative report indicating that a large bulging L5-S1 disk was identified and removed during claimant's surgery, was not included in the packet of evidence provided by the MRU to the Director, both parties agree that the MRU was in possession of Exhibit 189 and that it was excluded from the documentation by clerical error.

and Bert's assertion that claimant experienced relief following the surgery. Considering those germane facts already in the record is not finding additional facts; it is merely considering all the relevant facts in the record pursuant to a substantial evidence review. No reasonable person would have failed to consider the results of the surgery.

The Director clearly indicated that he understood the standard of review. In his final order he stated:

"Pursuant to ORS 656.327(2), MRU's order may be modified only if the order is not supported by substantial evidence or for errors of law. Substantial evidence exists to support a finding when the record, *reviewed as a whole*, would permit a reasonable person to make that finding. *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 752 P2d 312 (1988)." (Emphasis added.)

Employer appears to believe that any evidence supporting a decision in the record is sufficient to survive substantial evidence review. That is incorrect. As the Director stated, citing *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990),

"[e]vidence against the finding as well as evidence supporting it must be evaluated to determine whether substantial evidence exists to support that finding. If a finding is reasonable *in light of countervailing as well as supporting evidence*, the finding is supported by substantial evidence." (Emphasis added.)

■■ Generally, where the record merely reflects a difference in medical opinion, substantial evidence in the record may support either outcome. *See Armstrong*, 90 Or App at 206. However, that is not the case if "credible evidence apparently weighs overwhelmingly in favor of one finding and the [agency] finds the other without giving a persuasive explanation." *Id.* Here, the MRU based its decision on data from six doctors who stated that the surgery was unnecessary because they believed that claimant did not have a herniated disk and who entirely ignored the unrebutted evidence that the surgery revealed that claimant *did* have a herniated disk. The MRU provided no explanation, persuasive or otherwise, for relying on old and inconclusive data that claimant did not

have a herniated disk when new and conclusive data demonstrated otherwise. *Cf. Linn Care Center v. Cannon*, 74 Or App 707, 709-10, 704 P2d 539 (1985) (under earlier statutory scheme, where postsurgical evidence demonstrates that surgery was in fact needed and beneficial, that information is relevant and should be considered in determining the compensability of medical services).

Here, the final order makes explicit that the results of the actual surgery, the crucial countervailing evidence, were not even considered by five of the doctors. For the MRU to have considered such inadequate medical evidence to be substantial in the face of those actual results was unreasonable. Rohrer, the one physician who did consider postoperative information besides Bert, reported that he used only preoperative radiographic data to determine that the surgery at the L5-S1 level was not necessary or appropriate.

Based on the foregoing, we conclude that the Director both correctly understood and correctly applied substantial evidence review in setting aside the MRU decision.

Affirmed.