Argued and submitted April 6, affirmed October 13, 1999

Lowell F. BINGHAM,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Northern Automotive Corp.,
*Respondents.*

(98-AB-0617; CA A101952)

987 P2d 578

Michael J. Gentry argued the cause for petitioner. With him on the briefs was Tooze Duden Creamer Frank & Hutchison.

Brian R. Talcott argued the cause for respondent Northern Automotive Corp. With him on the brief were G. Kenneth Shiroishi and Dunn, Carney, Allen Higgins & Tongue.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Philip Schradle, Assistant Attorney General, waived appearance for respondent Employment Department.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

**HASELTON, J.**

Claimant seeks review of a decision of the Employment Appeals Board denying him unemployment benefits. The Board concluded that claimant's refusal to provide his employer with a written statement regarding work-related conduct was misconduct. ORS 657.176(2)(a).[1] Claimant challenges the findings underlying that determination as being unsupported by substantial evidence, ORS 183.482(8)(c),[2] and further asserts that those findings are not rationally related to the Board's ultimate conclusions. *The Steel Yard, Inc. v. Natl. Council on Comp. Ins.*, 127 Or App 267, 271, 873 P2d 332 (1994). We affirm.

Claimant worked for employer, a retail automotive parts chain, for seven years. In his position as an "asset protection manager," claimant's responsibilities included conducting training sessions for new employees on a variety of issues, such as fraud and theft prevention, sexual harassment, and employer's equal opportunity employment policy. On September 15, 1997, claimant conducted a training class for new employees. During that training session, claimant made statements referring to some ethnic groups and to sexual orientation, which at least one trainee found to be objectionable.[3]

---

[1] ORS 657.176(2)(a) provides, in part:

"An individual shall be disqualified from the receipt of benefits * * * if the authorized representative designated by the director finds that the individual:

"(a) Has been discharged for misconduct connected with work."

[2] ORS 183.482(8)(c) provides:

"The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

[3] There are conflicting versions of claimant's remarks at the training session. At a minimum, however, claimant described "Jamaicans" or the "Jamaican Crime Family" as an example of an organized group that trains its members to defraud retail businesses, and, when a trainee at the session asked claimant why he was focusing on Jamaicans, claimant responded by discussing both the "Black Gorilla Family" (a black prison gang) and the "Mexican Mafia" (a Hispanic prison gang) as two other groups that, in his experience, frequently commit fraud and theft in retail businesses. Claimant also told the trainees that employer was an "equal opportunity employer" and explained that that meant that it hired employees of all colors, as well as gays and lesbians.

Shortly thereafter, claimant received a complaint about his statements during the training session. Claimant reported the complaint to his supervisor, Roscoe, and explained what had transpired at the session. On September 23, 1997, Roscoe placed claimant on administrative leave and began a formal investigation.

On October 2, 1997, Roscoe met with claimant to discuss the incident again. At that meeting, Roscoe asked claimant to give him a written statement describing what claimant had said at the training session. Claimant refused, stating that he "was not required to provide a written statement." In response, Roscoe stated that his request for a written statement was "a reasonable work request," and that he was asking for the written statement both in his capacity as an investigator and as claimant's direct supervisor. Claimant again refused to provide the written statement. Roscoe then asked claimant to sign a statement documenting his refusal to provide a written report of the training session. Claimant refused that request as well and stood up to leave the meeting. Roscoe told claimant that he planned to continue the investigation, and the meeting ended.

Claimant was discharged later that day. The termination letter, signed by Roscoe, stated:

"As a result of our thorough investigation, you are being terminated for the following behaviors, which violate company policy:

"1.   You violated our company's 'equal employment opportunity' policy when you used racial/ethnic stereotypes when you presented information to newly hired employees during a company training session on 9/15/97 (i.e. statements in regards to Jamaicans). * * *

"2.   You were wilfully insubordinate to me as your supervisor during the investigation into this matter. * * * You were asked to provide a written statement during a [loss prevention] interview in regards to your recollection of the details surrounding your presentation on 9/15/97. You refused to do this even after I instructed you as your supervisor to provide me with a written statement."

Claimant applied for unemployment benefits on October 8, 1997. The Employment Department allowed

claimant unemployment benefits, and employer requested a hearing. On review, the administrative law judge sustained the allowance of benefits, concluding that claimant had not been discharged for "misconduct" within the meaning of OAR 471-030-0038(3).[4]

On review, the Board reversed. The Board concluded that, although claimant's statements at the training session represented a violation of employer's reasonable standards of behavior, that conduct was neither "willful nor wantonly negligent," OAR 471-030-0038(3), and, thus, was not misconduct. Conversely, the Board concluded that claimant's refusal to provide his supervisor with a written statement *was* misconduct precluding entitlement to benefits. The Board's essential reasoning, which is central to our review, stated:

> "The employer discharged claimant primarily because he refused to provide his supervisor with a written statement of his conduct during a training session that took place on September 15, 1997. The employer had a reasonable right to expect claimant to provide information regarding his work-related conduct in any form necessary to fully investigate the matter. * * * We are persuaded that claimant was clearly aware of the employer's expectations for him to provide a written statement, as his supervisor requested it at least twice, and claimant admitted that he understood what was being asked of him. Claimant made a conscious decision not to provide a written statement because he did not want to give the employer information that might be

---

[4] OAR 471-030-0038(3) defines misconduct, in relevant part, as:

"willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee, * * * [or] [a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest."

The rule also provides, in part, that:

"Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct." *Id.*

OAR 471-030-0038(1)(b), in turn, defines "wantonly negligent" as

"[I]ndifference to the consequences of an act or series of actions, or a failure to act or a series of failures to act, where the individual acting or failing to act is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee."

incriminating. Claimant willfully violated the employer's reasonably expected standards of behavior.

"We are not persuaded that claimant held a good faith belief that he did not have to follow the specific request of his supervisor. Although the supervisor requested the statement, rather than demanding it, the record is persuasive that claimant understood that the supervisor expected him to provide the statement. We are not persuaded that claimant misunderstood what was being asked of him.

"Claimant argues that he did not have to provide a statement because he had not been allowed to require written statements from individuals in the course of his investigations. However, because claimant had no experience with the employer in investigating the conduct of a subordinate, and because claimant's supervisor made it clear to claimant that he was requesting the statement not only as an investigator but also as claimant's direct supervisor, we are not persuaded that claimant could have believed in good faith that his past experience was analogous to the situation that he faced with his supervisor. Rather, we are persuaded that claimant used that explanation as an excuse because he did not want to give the employer complete and accurate information about his conduct during the training class. Claimant testified very clearly that he did not wish to provide the employer with information that might be used against him and that he made the decision 'against self-incrimination.' * * * We are persuaded that self-protection motivated claimant, rather than a good faith belief that the employer had no right to expect him to provide a written statement. We conclude that claimant did not commit a good faith error."

■■ On review, claimant raises 15 assignments of error, which variously challenge predicate findings of fact as unsupported by substantial evidence or assert that those findings are not rationally related to the Board's conclusions.[5] ORS 183.482(8)(c). To determine whether the Board's findings of fact are supported by substantial evidence, we review the entire record to determine whether the evidence,

---

[5] Employer cross-assigns error to the Board's conclusion that claimant's statements referring to ethnic groups and sexual orientation during the training session did not constitute misconduct. Given the nature of our disposition, we do not reach the cross-assignment.

viewed as a whole, would permit a reasonable person to make the challenged finding. *Id.*; *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). In reviewing the Board's legal conclusions, we determine whether there is a rational connection between the Board's findings of fact and its legal conclusions. *The Steel Yard,* 127 Or App at 271; *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190, 530 P2d 862 (1975).

The bulk of claimant's assignments of error raise substantial evidence challenges to three interrelated findings underlying the Board's order: (1) that employer, through claimant's supervisor, Roscoe, directed claimant to provide a written statement; (2) that employer had a right to expect such a statement; and (3) that claimant understood that he was being directed to provide the statement as a mandatory, not voluntary, matter. Claimant argues that there is not substantial evidence to support any of those three findings.[6] Before addressing the particular sufficiency of those findings, we recount the evidence bearing on claimant's refusal to give a written statement, that is, the "evidence against the finding as well as evidence supporting it." *Garcia,* 309 Or at 295 ("If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence.").

Roscoe, the supervisor, testified that, pursuant to an unwritten company policy, requests for written statements from employees relating to pending investigations were generally not mandatory when made by an investigator who was not in a supervisory capacity. However, at the outset of the October 2, 1997, meeting, he told claimant that he "was not only the investigator, but [claimant's] supervisor on that day and that there are different conducts that may be expected because [he] was [claimant's] supervisor." Roscoe testified that he told claimant: "At this point, I would like you to provide me with a written statement of the accounts of the [training session] that day and I need to remind you that I'm making this request both as an investigator and as your

---

[6] Claimant characterizes his first six assignments of error as challenging "a single core finding, namely that the employer in fact required a written statement from [claimant], that the employer had a right to require a written statement, and that [claimant] knew a written statement was required."

direct supervisor." According to Roscoe, he generally phrased work commands or directives as "requests," and claimant had adhered to such "requests," so phrased, in the past. Roscoe further testified that claimant responded that "[claimant] was not required to give me a written statement," and that Roscoe then "asked him if he was sure that he wanted to take that position and said that as a supervisor [he] was asking for * * * a reasonable work request." Roscoe testified that, in his view, his request for a written statement was a normal directive from a supervisor to a subordinate.

Claimant described essentially the same sequence of events but from a different perspective. Claimant gave two related reasons for his refusal to provide Roscoe with a written statement regarding the training session. First, he explained that he knew he would not be able to write down verbatim what he had said and that he therefore decided not to write down anything, because it could otherwise later be used against him as proof that he had lied. Second, he explained that, based on his experience as an investigator for employer, it was his understanding that written requests during investigations were not mandatory:

> "I made the decision against self-incrimination of any kind. I did not write the statement. And I knew I did not have to because in all of the investigations that I've done, and there have literally been hundreds of them, * * * I could never request a written statement. It was always voluntary. * * * [U]nless there are two sets of rules for management and everybody else, okay, I could not demand anybody to give me a written statement, even when I conducted investigation in the immediate supervisor's presence."

Claimant stated that, while he was "very seldom" an immediate supervisor of the employees he investigated, he did conduct investigations with the employee's immediate supervisor present. Lastly, claimant testified, "in my experience, seven and a half years, nobody ever lost their job for not submitting [a written statement pursuant to an investigation] and had I been told that I could be fired for not doing it, that would have been a different situation. I was not told that."

We turn first to whether there was substantial evidence to support the Board's findings that employer, through

Roscoe, did in fact *require* a written statement from claimant. Claimant's position, as we understand it, is that the record establishes that Roscoe merely "requested" the written statement and that such a request comported with the well-established practice of not requiring written statements from employees under investigation. Claimant's position is not implausible, and, on this record, the Board *could* have made a different finding. *See Armstrong v. Asten-Hill Co.*, 90 Or App 200, 752 P2d 312 (1988) (noting that, in some contexts, "whichever way the [Workers' Compensation] Board finds the facts will probably have substantial evidentiary support [and w]e would not need to choose sides"). Nevertheless, the Board's finding is supported by substantial evidence. Roscoe testified that he customarily phrased work directives as "requests" and that claimant adhered to them as directives. Moreover, although the record evidence substantiated a long-established policy by which *investigators* could not require employees to provide written statements, the record did not substantiate such a policy with respect to requests made by an employer's supervisor.[7] Thus, there was no evidence of a policy precluding supervisors, like Roscoe, from requiring written statements from their subordinates.

■ Claimant's substantial evidence challenge to the second predicate finding—that the employer had a right to require a written statement—fails for similar reasons. Employers can reasonably expect, and require, their employees to provide written statements regarding work-related conduct that may expose the employer to liability. That entitlement may, in appropriate cases, be limited or qualified by established policy, pattern, or practice. Here, however, there was no evidence substantiating such a limitation on employer's general right to expect compliance with such a request made by an employee's supervisor.

■ Claimant's final substantial evidence challenge pertains to the Board's finding that claimant understood that Roscoe's "request" was, in fact, a requirement. Claimant

---

[7] As noted, claimant testified to "hundreds" of instances in which he, as an investigator, had been unable to require employees to give written statements. However, he did not testify to any instance in which a supervisor was unable to require a written statement. Roscoe explicitly testified that he requested the written statement in his capacity as claimant's supervisor.

again emphasizes both Roscoe's benign phrasing—*i.e.*, that Roscoe did not say, "Do this or else . . ."—as well as the context of investigators being unable to require the production of written statements. Claimant also emphasizes that there was no company policy explicitly authorizing supervisors to require employees to provide written statements. We agree with claimant that, from that evidence, the Board *could* have found that he reasonably viewed Roscoe's request as nonmandatory.

Again, however, substantial evidence supports the Board's contrary finding. Claimant's subjective understanding of Roscoe's directive was ultimately a matter of credibility.[8] The Board could, and did, determine that claimant understood, from his history with Roscoe, that Roscoe's "request" was mandatory, that claimant understood that the policy limiting demands for written statements did not apply to supervisors, and that claimant's refusal to give the written statement resulted not from some reasonable misunderstanding, but from a desire to avoid self-incrimination. This is not a situation where "the credible evidence apparently weighs overwhelmingly in favor of one finding, and the Board finds the other without giving a persuasive explanation." *Armstrong*, 90 Or App at 206; *cf. SAIF v. Leland*, 160 Or App 480, 487, 982 P2d 48 (1999). Consequently, the Board's findings were supported by substantial evidence.

■       Finally, claimant argues that there is no rational relationship between the Board's underlying findings of fact and its conclusion that "[c]laimant willfully violated the

---

[8] Claimant also argues, citing *Burns Bros., Inc. v. Employment Div.*, 99 Or App 714, 717, 784 P2d 117 (1989), that the Board was required either to adopt the ALJ's credibility findings or explain clearly why it rejected them. Claimant's argument fails in light of the legislature's post-*Burns Bros.* amendment to ORS 657.275, which provides:

"Where there is evidence in the record both to make more probable and less probable the existence of any basic fact or inference, the Employment Appeals Board need not explain its decision to believe or rely on such evidence unless the referee has made an explicit credibility determination regarding the source of such facts or evidence. The Employment Appeals Board is not required to give any weight to implied credibility findings." ORS 657.275(2).

Here, although the ALJ apparently found claimant's testimony to be credible, she did not make any explicit credibility determinations. The Board was free to "believe or rely on" any of the evidence in the record without explaining the reasons for its credibility determination.

employer's reasonably expected standard of behavior" and that "claimant did not commit a good faith error." We disagree. The Board's conclusion that claimant "willfully" refused to comply with employer's directive flows clearly from its factual findings that employer requested claimant to make a mandatory written statement; that claimant understood employer's request for a written statement to be mandatory; and that claimant nonetheless refused to comply with the request.

We reject claimant's remaining assignments of error without further discussion.

Affirmed.