Argued and submitted August 1, 2000, reversed and remanded for reconsideration February 28, 2001

In the Matter of the Compensation of
Corinne L. Birrer, Claimant.

Corinne L. BIRRER,
*Petitioner,*

*v.*

PRINCIPAL FINANCIAL GROUP
and Johnston & Culberson, Inc.,
*Respondents.*

(98-01138, 98-01097, 98-01095; CA A106163)

19 P3d 972

Donald M. Hooton argued the cause and filed the brief for petitioner.

Richard D. Barber, Jr. argued the cause for respondents. With him on the brief was Sheridan, Bronstein & Levine, LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Claimant petitions for review of an order of the Workers' Compensation Board that upheld both employer's denial of the continued compensability of injuries to her right and left wrists and its contemporaneous closure of the claim without an award of permanent disability. She argues that the Board improperly allowed employer to raise a ground for the denials that it did not mention in the denial letter and that it should have required a medical arbiter's report before deciding the extent of her left wrist disability. We reverse and remand.

The issues in this case are primarily procedural. We state the facts as the Board found them, supplemented with undisputed evidence in the record. Claimant works for employer as a medical claims data processor. At the time of the hearing, she had worked in data entry for over 25 years. She filed claims for left wrist tendinitis in January 1996 and for right wrist tendinitis in August 1996. Employer accepted both claims, giving each a separate claim number. It accepted the left wrist condition as nondisabling and the right wrist condition as disabling. In August 1996, claimant's physician concluded that the left wrist condition was medically stationary; employer closed that claim soon afterwards. Despite the closure, claimant's left wrist continued to bother her, and in April 1997 she had surgery for left wrist intersection syndrome. Because her physician concluded that the left and right wrist conditions were related, employer, rather than reopening the closed left wrist claim, treated the left wrist condition as part of the open right wrist claim. On October 29, 1997, it closed that claim so far as the right wrist condition was concerned; claimant sought reconsideration of the closure.[1] ORS 656.268(5)(c).

On January 28, 1998, employer formally modified its acceptance to cover both the disabling right wrist tendinitis and the left wrist tendinitis/intersection syndrome. On the

---

[1] In September 1997, claimant filed an aggravation claim based on her physician's conclusion that problems that she experienced with her right elbow were related to her work. She does not challenge the Board's decision upholding employer's denial of that claim.

same day, employer denied the claim that it had just accepted, explaining to claimant that "the information we have received indicates that your compensable injury no longer remains the major contributing cause of your disability and need for treatment for your left wrist condition. ORS 656.005(7)(a)(B)." On February 2, employer amended both the acceptance and the denial. The only substantive change was that the denial now included a statement that it might lead to closure of the claim. On the same day, employer closed the claim. Claimant thereafter sought reconsideration of the February 2 closure.

Also on February 2, Dr. Peter Nathan conducted a medical arbiter's examination of claimant's right wrist as part of the evaluation of her request for reconsideration of the October closure. ORS 656.268(7)(a). At that time, claimant had not sought either reconsideration of the February 2 closure of the left wrist claim or a medical arbiter's examination of it. Nathan, thus, was not aware of the left wrist closure and did not examine claimant with that claim in mind. He did give some attention to the left wrist as well as the right during the examination, noting a reduced range of motion in the left wrist compared to the right. However, Nathan evaluated only the right wrist in his report, finding no significant limitations as a result of the accepted condition.

After receiving Nathan's report, the appellate reviewer for the Department of Consumer and Business Services told him about the accepted left wrist condition and asked him to answer questions concerning it based on his February 2 examination. In response, Nathan stated that his examination of the left wrist had been more general than that of the right wrist. He explained that, although he had found no objective findings of anything that was a direct residual of the intersection syndrome, he had not attempted to determine the source of the reduced range of motion in the left wrist. Still, it did not appear to him that there was any significant limitation in claimant's ability to use her left hand and wrist due to a chronic and permanent condition arising out of the accepted condition. Nathan concluded by saying that he would need to see claimant again to give more detailed information because her left wrist was not the primary focus of his examination.

On February 23, the Department issued an order affirming the October closure. On March 5, it issued a second order affirming the February 2 closure. Claimant sought a hearing on each order. After the consolidated hearings, the administrative law judge (ALJ) concluded that employer's denial of claimant's current left wrist condition was improper because there had been no acceptance of a preexisting condition or a combined condition before the closure occurred. The ALJ also held that claimant was entitled to a complete medical arbiter's examination of her left wrist. He therefore set aside the March order affirming the February 2 closure in those respects and affirmed all other aspects of both orders.

Claimant did not appeal to the Board on the issues that she lost. On the employer's appeal, the Board reversed the ALJ's decision and affirmed the Department's orders in their entirety. It concluded that employer had not shown that claimant had a combined condition, primarily because employer had not identified any other condition that could be responsible for her condition. However, the Board then found that the preponderance of the medical evidence showed that claimant's current condition was not related to her accepted injury. Claimant sought reconsideration, arguing that the Board decided the case on an issue not framed by the denials, but the Board adhered to its conclusion.[2]

In her first assignment of error, claimant asserts that the Board erred by affirming the January 28 and February 2 denials on a ground other than the one that employer identified in the denials. The stated ground for the denials was that the accepted condition was no longer the major contributing cause of claimant's disability, and the denials

---

[2] A "combined condition" occurs when a work-related injury combines with a preexisting unrelated condition to cause the claimant's current condition. In order for a combined condition to be compensable, the work-related injury must be the major contributing cause of the current condition. ORS 656.005(7)(a)(B). It is implicit in a combined condition denial that the employer treats the accepted injury as a material factor in the claimant's current condition, even though it is no longer the major contributing cause. In contrast, a current condition denial involves an assertion that the accepted injury is *not* a material factor in the claimant's current condition. Thus, each kind of denial involves an assertion about the causation of the claimant's current condition, but the assertion in each case is significantly different.

expressly referred to the statute concerning combined conditions. However, the Board affirmed the denials on the ground that there was *no* relationship between claimant's current condition and the accepted injury. The ALJ did not discuss that issue in his order. Rather, he decided that employer's combined condition denial was not procedurally proper, because employer had not accepted a combined condition before denying the continuing compensability of the left wrist claim. In denying claimant's motion for reconsideration on the ground asserted in this assignment of error, the Board found that claimant should have known that employer's denials put in issue whether claimant's current condition was related to the accepted conditions.

Claimant does not assert on review that the record is factually insufficient to support the Board's finding that her current condition is not related to her accepted injury.[3] Rather, she reiterates that the Board erred in going beyond employer's denial after it concluded that there was no combined condition for employer to deny. She emphasizes that the only issue that employer raised on appeal to the Board was whether its denials were procedurally improper. Claimant says that she was not given the opportunity to litigate the issue decided by the Board. Employer argued to the Board that the Board's decision in *Tracey A. Blamires*, 50 Van Natta 1793 (1998), allowed it to deny a combined condition under ORS 656.262(7)(b) without having first accepted it under ORS 656.005(7)(a)(B). However, as claimant points out, the Board's holding in *Blamires* is inconsistent with our subsequent decision in *Croman Corp. v. Serrano*, 163 Or App 136, 986 P2d 1253 (1999). After this case was submitted, we reversed the Board's decision in *Blamires v. Clean Pak Systems, Inc.*, 171 Or App 263, 15 P3d 101 (2000).[4] Employer next argues that, regardless of the fact that the Board may have incorrectly decided this case based on its ruling in *Blamires*, it correctly reached the issue of whether claimant's

---

[3] Claimant *does* assert that, if she had known that employer would argue that it had made a current condition denial, she would have tried her case differently.

[4] The rule of *Croman Corp.* is that, under the wording of ORS 656.262(6)(c), the acceptance of a combined condition must precede the denial of a combined condition. Here, the ALJ found that there never was an acceptance of a combined condition.

current condition is related to her accepted injury, and it correctly found that her current condition was not related to her accepted injury. As to claimant's argument that the Board went beyond the scope of employer's denials, employer argues that substantial evidence supports the Board's decision that claimant "had notice of the alternate theory."

We agree with claimant that the Board went beyond the express scope of the denials when it concluded that claimant's current condition is not related to her accepted injury. The Board's response on reconsideration to claimant's argument that it decided the case on an issue that was not before it is puzzling. In its opinion on reconsideration, the Board referred to the issue as the "Zora Ransom" issue.[5] It noted that the ALJ's opinion stated that employer contended that the denials were procedurally proper, citing the *Ransom* case. It then concluded:

> "The ALJ's order indicates that the parties had raised the issue of whether the employer's preclosure denials were procedurally valid, which included whether claimant's current *left wrist condition was or was not related to the* accepted left wrist condition. On Board review, claimant did not contest the ALJ's summary of the parties' respective positions. Under these circumstances, we find that claimant was adequately apprised of the * * * issue at hearing and we find no evidence that she objected."

In a footnote, the Board explained that the claimant's argument on reconsideration came too late. It then said that if it were to consider claimant's argument, it would find that claimant implicitly agreed to try the issue before the ALJ.

■■ An implicit *agreement* to try an issue outside the express terms of a denial requires the meeting of the minds of the parties on what issue is to be tried and their implicit consent to try that issue. The Board does not explain how employer's reliance on the *Ransom* case and claimant's "failure to object" to that reliance constitutes an implicit agreement by claimant to try an issue outside the express terms of the denials. To adopt the Board's reasoning apparently would mean that every time a party cites a case in an argument, the

[5] The reference is to a Board decision, *Zora Ransom*, 46 Van Natta 1287 (1994).

failure of the other party to respond constitutes an *agreement* that the issue in the cited case is also an issue in the case at bar.[6]

■    As to the timeliness of claimant's argument, it could be untimely only if claimant had notice of the issue in the proceeding before the ALJ and the ALJ had decided the issue. If the Board's rejection of claimant's argument is based on the finding that the issue was decided by the ALJ and that claimant failed to raise it on appeal, it is not apparent what evidence supports that finding. The Board refers to the ALJ's summary of the parties' respective positions, but it is unclear to what portion of the ALJ's order the Board is referring. We find no express reference in the ALJ's opinion to the issue decided by the Board, and the ALJ ruled that employer's denials were procedurally improper because there was no accepted preexisting condition or combined condition before closure occurred. Thus, we are unable to discern from the Board's explanation of how it reached its conclusion that there was no procedural defect in employer's denials. On remand, the Board must provide a sufficient explanation to demonstrate that its conclusion is based on substantial evidence and substantial reason. *See SAIF v. Leland*, 160 Or App 480, 486-87, 982 P2d 48 (1999). *See also Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988).

■    In her third assignment of error,[7] claimant asserts that the Board erred in holding that the ALJ was without authority to remand the case to the Department for a full medical arbiter examination of her left wrist before determining the extent of her disability. The Board reversed the ALJ's decision on this point primarily because it found that the medical evidence in the record showed that the compensable injury was no longer related, in major or material part, to the accepted left wrist tendinitis/intersection syndrome condition. It noted that Nathan expressly said that there were no objective findings from the left wrist intersection

---

[6] Claimant did in fact object to employer's attempt to raise the current condition argument during its oral argument before the ALJ. Because the ALJ did not decide that issue, and employer did not raise it before the Board until its reply argument, claimant had no reason to discuss it until after the Board's decision.

[7] Our resolution of the first assignment of error makes it unnecessary to consider the second.

syndrome. Although Nathan did not comment about the left wrist tendinitis, claimant's treating physician testified that he was not certain that claimant still had a tendinitis condition or that her work activities were a material factor in her current condition. Based on those reports, the Board concluded that the preponderance of the evidence established that claimant has no impairment from her accepted left wrist condition.

Claimant points out that ORS 656.268(7)(a) provides that, if the claimant's basis for objecting to a notice of closure is disagreement with the impairment used in rating the disability, "the director *shall* refer the claim to a medical arbiter appointed by the director." (Emphasis supplied.) A medical arbiter examination, thus, is mandatory. Although Nathan gave the best opinion that he could based on the limited examination that he conducted, he emphasized that he had not examined claimant in order to determine the causation of her left wrist condition or its residual effects. He specifically did not express any opinion about the reasons for the reduced range of motion in her left wrist. Even if the Board properly accepted his tentative conclusion concerning the residual effect of the intersection syndrome, Nathan did not foreclose the possibility that the reduced range of motion was the result of the tendinitis. Claimant, in short, has not had the medical arbiter examination of her left wrist that the statute requires before the Department or the Board rates her permanent disability. Consequently, we reject employer's argument that the record before the Board was sufficient to make a decision on impairment.

The Board also noted that it had previously held that an ALJ does not have the authority to remand a case for a medical arbiter examination. *Dennis R. Loucks*, 50 Van Natta 1779 (1998). However, in *Loucks* and other cases, the Board adopted alternative remedies to provide for such an examination before the ALJ rules on the case. *See, e.g., Vicky L. Woodard*, 52 Van Natta 796 (2000). There is no apparent reason why the Board lacks authority to adopt those alternative remedies if it chooses to employ them on remand.

Reversed and remanded for reconsideration.