Argued and submitted August 3, 2007, reversed and remanded April 16, 2008

# LIBERTY NORTHWEST INSURANCE CORPORATION
## and Department of Consumer and Business Services,
### *Respondents,*

*v.*

## Rebecca S. MUNDELL,
### *Petitioner.*

### Department of Consumer and Business Services
### H05144; A131165

182 P3d 898

Christopher D. Moore argued the cause and filed the briefs for petitioner.

David O. Wilson argued the cause and filed the brief for respondent Liberty Northwest Insurance Corporation.

Richard D. Wasserman, Attorney-in-Charge, Civil/ Administrative Appeals Unit, waived appearance for respondent Department of Consumer and Business Services.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

■     Claimant seeks judicial review of an order by an administrative law judge (ALJ) that reversed an order of the Medical Review Unit (MRU) of the Workers' Compensation Division (WCD) of the Department of Consumer and Business Services. The MRU had ordered Liberty Northwest Insurance Company to pay claimant's treating physician, Dr. Johnson, for psychiatric treatment provided to claimant. Claimant argues that the ALJ, in reversing the MRU's order, applied an erroneous standard of review. We review for errors of law, *SAIF v. Leland*, 160 Or App 480, 485, 982 P2d 48, *rev den*, 329 Or 527 (1999), and reverse and remand.

The material facts are undisputed. In 1998, claimant sustained an injury while employed at Oregon Health Sciences University (OHSU) when an agitated patient hit claimant in the face and neck and kicked her. Liberty Northwest initially accepted a claim for a right thigh contusion, nasal contusion, cervical strain, and mild closed-head injury. Subsequently, Liberty Northwest amended its acceptance to include major depressive disorder and post-traumatic stress disorder.

After the injury, claimant sought treatment from Johnson for depression and post-traumatic stress disorder, which resulted in claimant having "difficulties being in public, coping with children, sleeping, and a need to avoid people." Later in 1998, and again in 2003, Dr. Turco examined claimant at the request of Liberty Northwest. In 2002, Dr. Goranson also conducted a medical examination at Liberty Northwest's request. Both Turco and Goranson expressed strong disagreement with Johnson's treatment of claimant, and both Turco and Goranson expressed disbelief that claimant's ongoing symptoms were associated with the incident at OHSU. Based on Turco's and Goranson's opinions, Liberty Northwest notified Johnson that it would no longer pay for his treatment on the ground that the care was not directed toward a compensable condition.

Johnson requested administrative review by the WCD. In response, Liberty Northwest reported that Johnson was treating claimant for "non-work related issues" and that

Johnson's treatment was neither appropriate nor effective. In effect, Liberty Northwest denied that the treatment was either compensable or reasonable. The issue of compensability was transferred to the Workers' Compensation Board, which ruled that Johnson's treatment was related to the accepted conditions and therefore compensable.

The medical treatment dispute—*i.e.*, the issue of the appropriateness—was reviewed by the WCD. *See* ORS 656.327(1)(a) (granting the director of the Department of Consumer and Business Services jurisdiction to review medical treatment disputes). The WCD requested that Dr. Sasser review claimant's records. Sasser opined that Johnson was not treating claimant for post-traumatic stress disorder and that his treatment was inappropriate. The WCD requested clarification from Sasser, who did not modify his opinion. The MRU reviewed the evidence and concluded that Johnson's psychiatric treatment of claimant was appropriate treatment of her compensable conditions and ordered Liberty Northwest to pay Johnson. In doing so, the MRU concluded that Johnson's opinion was more persuasive than the opinions of Sasser, Turco, and Goranson.

Liberty Northwest appealed that determination to an ALJ, pursuant to ORS 656.327(2).[1] OAR 436-001-0225 prescribes the ALJ's standard of review of the MRU order.[2] It provides, in part:

"(1)   Except for the matters listed in sections (2) and (3), the administrative law judge reviews all matters within the director's jurisdiction de novo, unless otherwise provided by statute or administrative rule.

"(2)   In medical service and medical treatment disputes under * * * [ORS] 656.327 * * * *the administrative law judge may modify the director's order only if it is not*

---

[1] ORS 656.327(2) provides, in part:

"If the worker, insurer, self-insured employer or medical service provider is dissatisfied with [the director's] order, the dissatisfied party may request review under ORS 656.704. The administrative order may be modified at hearing only if it is not supported by substantial evidence in the record or if it reflects an error of law. No new medical evidence or issues shall be admitted."

[2] The language of OAR 436-001-0225 has been amended since the time that the ALJ held the hearing in this case; however, the substance of that change does not affect our analysis.

*supported by substantial evidence in the record or if it reflects an error of law.* New medical evidence or issues may not be admitted or considered."

(Emphasis added.)

Purporting to apply the substantial evidence standard of review prescribed by OAR 436-001-0225(2), as the ALJ understood that standard, the ALJ reversed the MRU's order. In doing so, the ALJ made additional findings of fact, reweighed the evidence, and reached a conclusion contrary to that of the MRU.

On judicial review, claimant contends that the ALJ erroneously engaged in *de novo* review of the MRU's order, even though the ALJ purported to apply the substantial evidence standard. Liberty Northwest contends that the ALJ properly applied the substantial evidence standard of review and that the ALJ was required to make additional findings of fact because, according to Liberty Northwest, the MRU order failed to address the ultimate issue—whether Johnson's treatment of claimant was appropriate for her compensable condition. We disagree with Liberty Northwest.

■ Substantial evidence supports a finding of fact "when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). In reviewing a finding to determine whether it is supported by substantial evidence, the reviewing entity must "evaluate evidence against the finding as well as evidence supporting it to determine whether substantial evidence exists to support that finding. If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence." *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). As we have explained, " 'substantial evidence' review 'is not what has been referred to as the "any evidence" rule * * * but it is also *not de novo* review.' " *Liberty Northwest Ins. Corp. v. Kraft*, 205 Or App 59, 62, 132 P3d 60 (2006) (quoting *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988)) (emphasis in original).

Accordingly, in reviewing the MRU's order for substantial evidence, the ALJ was limited to evaluating the evidence in the record to determine whether, based on that evidence, a reasonable factfinder in the MRU's position could have made the findings that the MRU actually made. The ALJ does not have authority to determine whether the record could support findings different from those reached by the MRU, nor does the ALJ have authority to reweigh the evidence and substitute its view of the evidence for that of the MRU.

■     We turn to the ALJ's order to determine whether the ALJ correctly applied that standard and, for the following reasons, we conclude that it did not. First, the ALJ made additional findings of fact that were different from, and in some instances inconsistent with, the MRU's findings. As we explained in *Kraft*, making additional findings of fact is more apt to *de novo* review than substantial evidence review. 205 Or App at 63.

In *Kraft*, an ALJ reversed an order of the MRU that directed the insurer to pay certain expenses related to the claimant's canceled surgery. *Id.* at 61. The ALJ expressly stated in its order that it was reviewing the MRU's order *de novo*, notwithstanding the explicit directive of OAR 436-001-0225(2) to review the order for substantial evidence. *Id.* at 62. The ALJ then adopted some of the MRU's findings of fact, but also "rendered 'supplement[al]' findings of fact that were, ultimately, material to the ALJ's disposition." *Id.* We reversed and remanded to the ALJ for application of the correct standard of review, noting that "[n]othing in our understanding of 'substantial evidence' review comports with an adjudicator rendering findings of fact. Rather, the rendition of findings of fact is associated with *de novo* review." *Id.* at 62-63. Here, as in *Kraft*, the ALJ made additional findings of fact and relied on those findings to reach its ultimate disposition.

Second, the ALJ framed the issue as "[w]hether MRU *incorrectly* determined that psychiatric medical services provided by Douglass S. Johnson, M.D. * * * were medically appropriate," and the ALJ concluded that the MRU ultimately was "incorrect" in that regard. (Emphasis added.) However, the question posed and answered by the ALJ is

inconsistent with substantial evidence review as the Supreme Court explained it in *Garcia*; specifically, the question is not whether the MRU erred in its ultimate conclusion, but whether a reasonable person could have made the findings that the MRU made on the evidentiary record. *See Garcia*, 309 Or at 295.

Third, the ALJ improperly reweighed the evidence and substituted the ALJ's judgment for that of the MRU. Because this case involves differing medical opinions, the MRU was in the position of evaluating those opinions and making appropriate findings. The MRU in its order addressed each of the differing medical opinions and ultimately relied on Johnson's opinion.[3] The MRU expressly found the opinions of Turco, Goranson, and Sasser not persuasive and explained why the opinions were not persuasive.

The ALJ, purportedly relying on the substantial evidence standard, rejected Johnson's opinion, explaining that

"Dr. Johnson, as attending physician, failed to account for claimant's medical history. * * * Next, Dr. Johnson disregarded an objective medical test, the MMPI, in formulating claimant's diagnosis and treatment plan. * * * Next, he provided insight oriented therapy even though the MMPI indicated that it would not be effective as treatment for claimant. Moreover, in numerous reports, Dr. Johnson has failed to explain how insight oriented psychotherapy is expected to assist claimant in overcoming PTSD. Additionally, Dr. Johnson overstepped the boundaries of his role as medical provider and assumed an advocacy stance by attempting to exempt claimant from an independent medical examination (IME) which is authorized by statute and administrative rule."

(Footnotes omitted.) Based on that reasoning, the ALJ concluded that "there is no question that Dr. Johnson's treatment was ineffective; after years of treatment, claimant not only had not returned to work in any capacity, but was nonfunctional, isolated in her bedroom and engaged in suicidal

---

[3] The MRU also stated that its conclusion that Johnson's treatment was appropriate is "further supported by Dr. Henderson," petitioner's current attending physician who took over for Johnson when he retired.

ideation." On that basis, the ALJ concluded that the MRU's order was not supported by substantial evidence.

The ALJ further found that "the opinions of Dr. Turco, Dr. Goranson and Dr. Sasser are well-reasoned and based on complete information." That finding of fact directly conflicts with the MRU's finding that those medical opinions were unpersuasive. The ALJ acknowledged that "[t]he medical opinions here are divided" but ultimately concluded that "having reviewed the record as a whole, and *weighing both sides of the evidence*, I conclude that a reasonable person could not find otherwise."[4] (Emphasis added.)

In situations where medical opinions are divided, whichever way the finder of fact ultimately finds will likely have substantial evidentiary support. *See Dillon v. Whirlpool Corp.*, 172 Or App 484, 489, 19 P3d 951 (2001). In that situation, the entity reviewing the findings for substantial evidence " 'would not need to choose sides. * * * [T]he substantial evidence test * * * will be decisive only when the credible evidence apparently weighs overwhelmingly in favor of one finding and the [finder of fact] finds the other without giving a persuasive explanation.' " *Id.* (quoting *Armstrong*, 90 Or App at 206).

For all those reasons, the ALJ did not conduct a review of the MRU's findings of fact to determine whether those findings were supported by substantial evidence in the entire record. The ALJ made additional findings of fact and effectively reweighed the evidence and substituted its judgment for that of the MRU.

Reversed and remanded.

---

[4] It appears that the ALJ was referring to the MRU's ultimate conclusion that Johnson's treatment was appropriate.